UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 26-20247-CV-WILLIAMS

CARLOS ALBERTO DIONICIO CABRERA,

    Petitioner,

v.

TODD LYONS, *et al.*,

    Respondents.

_____/

## ORDER

**THIS MATTER** is before the Court on the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("***Petition***") filed by Petitioner Carlos Alberto Dionicio Cabrera ("***Petitioner***" or "***Mr. Cabrera***") (DE 1). The Court entered an Order to Show Cause on January 15, 2025 (DE 5), Respondents filed their Response in Opposition on January 19, 2026 (DE 8), and Petitioner filed a Reply on January 21, 2026 (DE 10). The Court asked Respondents for supplemental briefing[1] (DE 13), and Respondents filed that briefing on January 29, 2026 (DE 15). For the reasons discussed below, Mr. Cabrera's Petition (DE 1) is **GRANTED**.

    **I.**    **FACTUAL BACKGROUND**

Mr. Cabrera is a citizen of Guatemala. (DE 1 ¶ 1). He first entered the United States on March 22, 1993. (*Id.* ¶ 55; DE 8 at 4). On October 25, 1993, Mr. Cabrera was ordered to be deported, and he subsequently self-deported on November 1, 1996. (DE 1 ¶ 55; DE 8 at 5). On February 14, 2008, Mr. Cabrera reentered the United States and, after

---

[1] The Court asked Respondents whether there was any additional basis for Petitioner's detention.

encountering Border Patrol, he was physically removed on February 29, 2008. (DE 1 ¶ 56; DE 8 at 5). He entered the United States again on April 7, 2008, and has maintained a continuous presence since then. (DE 1 ¶ 56).

On June 19, 2014, Mr. Cabrera encountered and was detained by Immigration and Customs Enforcement ("**ICE**"). (*Id.* ¶ 57). During this detention, ICE reinstated Mr. Cabrera's October 25, 1993 removal order. (DE 8 at 5). Nonetheless, ICE released Mr. Cabrera that same day on an Order of Supervision. (DE 1 ¶ 57). On July 10, 2018, Mr. Cabrera filed an application seeking U nonimmigrant status. (*Id.* ¶ 59). On March 2, 2020, U.S. Citizenship and Immigration Services ("**USCIS**") granted Mr. Cabrera deferred action status. (*Id.* ¶ 60).

On January 12, 2026, during an enforcement operation, ICE encountered and detained Mr. Cabrera at a construction site. (DE 1 ¶ 62; DE 8 at 5). He was then taken to the ICE ERO Miramar Office ("**Miramar Office**"). (DE 8 at 5-6). On January 14, 2026, while detained at the Miramar Office, Mr. Cabrera filed his Petition, asking this Court to enjoin Respondents "from detaining or removing Petitioner in contravention of his unrevoked deferred action," and to order Respondents to "release Petitioner immediately." (DE 1 at 22). On January 15, 2026, Petitioner was transferred from the Miramar Office to the Florida Soft-Sided Facility-South ("**FSSFS**") located in Ochopee, Florida, where he remains detained.

## II. LEGAL STANDARD

District courts have the authority to grant writs of habeas corpus. *See* 28 U.S.C. § 2241(a). Habeas corpus is fundamentally "a remedy for unlawful executive detention."

*Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who shows that he is being held in custody in violation of the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3).

### III.   DISCUSSION

Mr. Cabrera seeks a writ of habeas corpus for his immediate release from custody, arguing that Respondents are unlawfully detaining him because he is the beneficiary of an unrevoked grant of deferred action. Respondents' primary arguments in opposition are: (1) the Court lacks jurisdiction[2] to adjudicate Mr. Cabrera's Petition; (2) Mr. Cabrera's continued detention is lawful; (3) Mr. Cabrera's deferred status does not preclude ICE from executing his removal order; and (4) Mr. Cabrera has no due process right to be released from custody. The Court considers each argument in turn below.

#### A.   Jurisdiction

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1328 n.4 (11th Cir. 1999). Accordingly, as a threshold matter, the Court must determine whether it has the requisite jurisdiction to adjudicate this action. Respondents argue that it does not because 8 U.S.C. § 1252(g) strips the Court of subject matter jurisdiction. (DE 8 at 6-7). Section 1252(g) precludes courts from considering

---

[2] Respondents also urge the Court to consider the issue of venue, arguing that "this matter can be transferred to the Middle District of Florida, where Petitioner is currently detained at the Florida Soft Side South Detention Center." (DE 8 at 1). The Court considers this argument *infra*.

claims "arising from or relating to the implementation or operation of an order of removal," along with challenges to the Attorney General's decision "to commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252; *Reno v. Am-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999) (explaining that Section 1252 is narrowly construed and only blocks courts from considering the three discrete actions of commencing proceedings, adjudicating cases, or executing removal orders). The instant matter, however, is not challenging any of those discrete actions.[3] Instead, Petitioner presents this Court with the narrow question of whether his detention is lawful in light of USCIS' decision to afford him deferred action status.

"[T]he proper jurisdictional analysis under Section 1252(g) focuses on the government action or decision that gives rise to the plaintiff's claims, not whether the plaintiff's claims might affect or preclude removal." *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 908 (W.D. Wash. 2025). Here, Petitioner's claim "arise[s] from the Government's grant of deferred action rather than from execution of his removal order," [so] § 1252(g) does not strip the Court of jurisdiction." *Espinoza-Sorto v. Agudelo*, No. 1:25-CV-23201, 2025 WL 3012786, at *5 (S.D. Fla. Oct. 28, 2025) (internal citations

---

[3] Respondents contend that because Petitioner is attacking his removal order, this action belongs squarely within the parameters of Section 1252(g). Even if Petitioner's detention is tangentially related to the execution of his removal order, that relationship is not sufficient to strip this Court of subject matter jurisdiction because Petitioner cannot be removed until his deferred action is terminated. The question before this Court is not the execution of a removal order, but rather the purported lawfulness of detaining someone with a grant of deferred action. *See Arce v. United States,* 899 F.3d 796, 800 (9th Cir. 2018); *see also Pasquini v. Morris,* 700 F.2d 658, 661 (11th Cir.1983) ("Deferred action status, also known as 'non-priority status,' amounts to, in practical application, a reprieve for deportable aliens. No action (i.e., no deportation) will be taken . . . against an alien having deferred action status.")

omitted); *see also Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863-64 (6th Cir. 2022) (holding that petitioner's deferred action status under DACA rendered her removal order "unexecutable" and, therefore, the matter was outside of the scope of § 1252(g)); *Espinoza Cruz v. Eng.*, No. 3:25-CV-919-CCB-SJF, 2025 WL 3469811, at *2 (N.D. Ind. Dec. 3, 2025) (finding jurisdiction where USCIS granted deferred action status to U visa applicant and applicant challenged "government's disregard of his deferred action status."). Accordingly, the Court finds that it has the requisite jurisdiction to consider Petitioner's claim that Respondents unlawfully detained him and are seeking to remove him notwithstanding his deferred action status.

  B. <u>Venue</u>

Mr. Cabrera is currently detained in FSSFS. Accordingly, Respondents assert that "this matter can be transferred to the Middle District of Florida." (DE 8 at 1). However, if a habeas petition had to be "transferred every time the petitioner is transferred, it is doubtful that the case would ever be decided." *Tang v. Gonzales*, No. 4:06-CV-00277, 2006 WL 3628061, at *2 (N.D. Fla. Aug. 18, 2006).

Mr. Cabrera properly filed his Petition pursuant to 28 U.S.C. § 2241 in this District, and he was detained in this District at the time of filing his Petition. Accordingly, notwithstanding his subsequent transfer out of the district, the Court finds that the Southern District of Florida is the proper venue for the adjudication of Mr. Cabrera's Petition. *See, e.g., Graham v. Rathman*, No. 1:14-CV-936-RDP-TMP, 2016 WL 1726105, at *2 (N.D. Ala. Apr. 6, 2016), *report and recommendation adopted*, No. 1:14-CV-936-RDP-TMP, 2016 WL 1698305 (N.D. Ala. Apr. 27, 2016) ("If the [habeas] petition is

properly filed pursuant to § 2241, venue is proper only in the district in which petitioner is incarcerated at the time of filing."); *Rumsfeld v. Padilla*, 542 U.S. 426, 441, 124 S. Ct. 2711, 2721, 159 L. Ed. 2d 513 (2004).

### C. The Lawfulness of Mr. Cabrera's Detention and Potential Removal

Respondents next assert that even if this Court has jurisdiction and finds venue proper in this district, Mr. Cabrera's "detention is lawful pursuant to 8 U.S.C. § 1231." (DE 8 at 7). In support, Respondents point to the fact that Mr. Cabrera is "subject to a valid reinstated order of removal under 8 U.S.C. § 1231(a)(5)." (*Id.*). In the same breath, Respondents argue that, even if Mr. Cabrera has a valid grant of deferred action, ICE's attempt to remove him (and subject him to detention) are unaffected. These frangible arguments are unpersuasive.

As a threshold matter, Respondents do not offer any caselaw to support their argument that deferred action status has no relationship to removal and detention authority.[4] Instead, courts tend to afford considerable weight to an individual's deferred action status. *See Espinoza-Sorto*, 2025 WL 3012786, at *5 ("Although the caselaw is limited, courts have held that a grant of 'deferred action' is an 'affirmative immigration benefit' that effectively makes it unlawful for a removal order to be executed while the alien has deferred action status."); *Ayala*, 794 F. Supp. 3d at *7 ("[D]eferred action. . .[means] 'no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated.'"); *Ariz. Dream Act Coal. v. Brewer*, 81 F. Supp. 3d 795, 800 (D. Ariz. 2015) (deferred action is "a form of prosecutorial

---

[4] Respondents point the Court to internal policy manuals but offer no cases to directly support their position.

discretion" by which the Secretary of Homeland Security "decide[s] not to pursue the removal of a person unlawfully in the United States"); *Lee v. Holder*, 599 F.3d 973, 974–75 (9th Cir. 2010) (DHS granted deferred action to U-visa applicants and that grant prevented their removal from the United States). When USCIS granted Mr. Cabrera deferred action status, the agency made an affirmative decision that it "would take no action to remove him while that status was in effect." *Espinoza*, 2025 WL 3012789 at *6. Without revocation of that status, ICE cannot unilaterally decide to detain and deport Mr. Cabrera.

Having established that Mr. Cabrera cannot be removed while his deferred action status remains in effect, the Court next considers whether Mr. Cabrera's continued detention is lawful and whether the detention violates his due process rights.[5] This question "turns on whether [the government] ha[s] free [rein] to detain a deferred action recipient without a pre-detention hearing or individualized determination." *Nevarez Jurado v. Freden*, No. 25-CV-943-LJV, 2025 WL 3687264, at *10 (W.D.N.Y. Dec. 19, 2025) (quoting *F.R.P. v. Wamsley*, 2025 WL 3037858, at *3 (D. Or. Oct. 30, 2025)). "Legal precedent strongly suggests that they do not." *Id.* Other courts confronted with the question of "whether an individual with an unrevoked grant of deferred action received sufficient procedure under the Fifth Amendment's Due Process Clause prior to their

---

[5] "It is well established that the Fifth Amendment entitled aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Moreover, the Fifth Circuit's recent decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330 (5th Cir. 2026) was limited to statutory interpretation and did not consider the due process issue. *Buenrostro-Mendez*, therefore, does not affect this Court's consideration of the due process issues in this matter. *See Hassen v. Noem, et al.*, 26-CV-00048 (W.D. TX. 2026).

detention" have applied the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). *See, e.g.*, *F.R.P.*, 2025 WL 3037858, at *3; *Nevarez Jurado*, 2025WL 3687264, at *10-11; *B.D.A.A. v. Bostock*, 2025 WL 3484912, at *5 (D. Or. Dec. 4, 2025).

The *Mathews* test considers the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

As to the first factor, Mr. Cabrera has a protected interest in his freedom since "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 679, 121 S. Ct. 2491, 2493, 150 L. Ed. 2d 653 (2001). Mr. Cabrera "received a grant of deferred action that has not been revoked, and he has a constitutionally protected interest in being free from detention while that status is pending." *Nevarez*, 2025 WL 3687264, at *11. Moreover, the government has not presented any evidence that Mr. Cabrera is a flight risk or a danger to the community. *See F.R.P.*, 2025 WL 3037858, at *4 (first *Mathews* factor favored deferred action recipient when there was "no evidence in the record that [he] [wa]s a flight risk or a danger to the community"). Accordingly, the first *Mathews* factor weighs in Mr. Cabrera's favor.

As to the second factor, ICE's detention of Mr. Cabrera compromises his protected

interest in being free. The reinstatement of a removal order "is a summary proceeding" and noncitizens subject to such an order "cannot seek any other relief." *Lopez v. Trump*, No. 25-CV-04826, 2025 WL 3274224, at *2-3 (S.D.N.Y. July 10, 2025). Based on the record before the Court, "ICE detained Petitioner . . . without . . .a hearing on the effect his lawful grant of deferred action has on his potential removal." *Maldonado v. Noem*, 2025 WL 1593133, at *2 (S.D. Tex. June 5, 2025). Because his deferred action status precludes removal, and because it appears that Respondents did not afford Petitioner an opportunity to address this issue, the Court finds that the second *Mathews* factor weighs in Mr. Cabrera's favor.

Finally, the government's interest in Mr. Cabrera's continued detention is minimal. "The costs to the public of immigration detention are 'staggering.'" *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017). To justify this staggering cost, the government must have some specific interest in the detention. To this point, the Court asked Respondents whether there was any other basis for Mr. Cabrera's detention. (DE 13). Respondents indicated that there were none. (DE 15). Indeed, Respondents have not alleged that Mr. Cabrera is involved in any sort of criminal activity that warrants his continued detention, or that his detention serves some overarching public interest. Instead, Respondents' only reason for detaining Mr. Cabrera is to remove him pursuant his reinstated removal order. Accordingly, the Court finds that "the government's interest in holding [P]etitioner . . . is low since [P]etitioner is a deferred action recipient and there is no evidence in the record suggesting a change to petitioner's qualifications." *F.R.P. v. Wamsley*, No. 3:25-CV-01917, 2025 WL 3037858, at *5 (D. Or. Oct. 30, 2025). Thus, the

third *Mathews* factor weighs in Mr. Cabrera's favor and, in conjunction with the other factors set forth above, the Court concludes that Mr. Cabrera's ongoing detention violates his rights under the Fifth Amendment's Due Process Clause.[6]

### IV.     CONCLUSION

"In the context of deferred action recipients, district courts have found both immediate release . . . to be appropriate[.]" *Santiago v. Noem*, 2025 WL 2792588, at *13 (W.D. Tex. Oct. 2, 2025). Since Mr. Cabrera cannot be removed, and because Respondents have failed to establish that he is a danger to the community or a flight risk, the Court finds that Mr. Cabrera's immediate release is appropriate.[7]

Accordingly, it is **ORDERED AND ADJUDGED** that Mr. Cabrera's Petition (DE 1) is **GRANTED**. On or before February 24, 2026, Mr. Cabrera must be released, and Respondents shall file a notice confirming their compliance.

**DONE AND ORDERED** in Chambers at Miami, Florida this 19th day of February, 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

---

[6] Some courts have concluded that the deferred action status, by itself, is sufficient to render detention inappropriate. *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) ("[B]ecause petitioner has been granted deferred action, he cannot be removed and the government therefore lacks any legal basis to detain him.")

[7] The Court's holding in this matter should be narrowly construed. Mr. Cabrera's deferred action status may be revoked by DHS at its discretion. *See Elvin Donaly Garcia Castillo v. Charles Parra, et al.*, No. 25-CV-25011, 2025 WL 4092624, at *4 (S.D. Fla. Dec. 1, 2025). Should DHS revoke Mr. Cabrera's deferred action status, this Order would not preclude ICE from detaining Mr. Cabrera or effectuating his removal.